

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00058-CV

———————————————

AKT INVESTMENTS, INC., Appellant

V.

T JORDAN TOWING, INC., Appellee

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-298672-18

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

After a representative for Appellant AKT Investments, Inc. appeared at trial without counsel, the trial court signed a take-nothing judgment on AKT's claims against Appellee T Jordan Towing, Inc. and, on the same day, also signed an order dismissing AKT's claims for want of prosecution. AKT then filed postjudgment motions seeking vacatur and a new trial, but the motions were overruled by operation of law. In six issues, AKT contends that the take-nothing judgment is the final judgment, that the trial court exceeded its jurisdiction by rendering the judgment based on want of prosecution, that AKT met its burden to obtain reinstatement, that *Craddock* required a new trial, that the trial court abused its discretion when it denied AKT a continuance prior to trial, and that the trial court violated AKT's due process rights when it granted AKT's counsel's motion to withdraw over AKT's objections. Because the trial court abused its discretion by denying reinstatement, we will reverse and remand.

## Background

In March 2018, AKT sued T Jordan—its former landlord—alleging that T Jordan had used AKT's state tax identification number to make wholesale purchases without paying taxes on the purchases and that as a result, AKT had incurred a tax assessment and judgment against it. AKT's suit was not brought to trial until November 2021, due to a series of continuances granted by the trial court and AKT's

difficulty in securing counsel. Between March 2018 and May 2021, the trial court granted

- T Jordan's November 2018 motion for continuance;

- AKT's March 2019 motion for continuance due to a death in the family of its attorney, John-Paul Chidgey;

- an October 2019 agreed motion for continuance filed by T Jordan because T Jordan's representative was out of the country on a family matter, and the parties needed additional time to complete discovery and for T Jordan to amend its pleadings;

- the February 3, 2020 motion to withdraw filed by Chidgey asserting that the "Client and Attorney relationship has been compromised due to personal issues";

- the March 2020 continuance motion filed by Gregory Wright of Jim Ross Law Group, P.C., who took the case after Chidgey's withdrawal and requested time to prepare for trial, to "review additional discovery," and to "work on resolution of this matter, including attending mediation prior to trial";

- AKT's April 2020 motion for continuance, filed by Jim Ross Law Group, asserting that Wright had left the firm and that another firm attorney had recently been assigned to the case; and

- the May 2021 motion to withdraw by Jim Ross Law Group due to firm personnel issues, including Jim Ross's being elected as mayor of the City of Arlington.

Terry Turzinski, who appeared on Jim Ross Law Group's behalf at the May 25, 2021 hearing on the firm's motion to withdraw, stated that the firm was operating "with a skeletal crew" and that the attorney who had taken over the case after Wright had also left the firm. Keyvan Moslemi, AKT's owner, stated that he was opposed to the withdrawal. He further stated, however, that he had already spoken with another

3

attorney, Michael O'Donnell, about representing AKT. Turzinski said that he had also spoken to O'Donnell, who had requested the case file to review. The trial court allowed the firm to withdraw and set the case for trial the week of November 1, 2021.

On October 7, 2021, T Jordan moved to dismiss the case for want of prosecution because AKT had not yet retained new counsel. The motion further asserted that AKT had never responded to discovery requests propounded by T Jordan in January 2020.

Attorney Kenneth Jones filed AKT's response to the motion. Jones stated that he had been conditionally retained on October 16, 2021, and that if the trial court did not dismiss the case and allowed a continuance, he would represent AKT and respond to T Jordan's discovery requests. The trial court neither dismissed nor continued the case, stating "*I'm not going to dismiss the case*, and [the case] may get called to trial, and we'll see where [the case is that day] on the [standby] docket." [Emphasis added.] The trial court did not state that it would grant T Jordan's motion if AKT did not have an attorney at trial.

AKT's representative appeared at trial on November 1 without an attorney, meaning that AKT effectively did not appear. *See Kunstoplast of Am., Inc. v. Formosa Plastics Corp., USA*, 937 S.W.2d 455, 456 (Tex. 1996) (stating that generally, a corporation may be represented only by a licensed attorney). The trial court announced that it was dismissing the case.

4

Two days later, the trial court signed a final take-nothing judgment (the Take-Nothing Judgment) ordering that AKT take nothing on its claims against T Jordan. On the same day, the trial court also signed an order dismissing the case for want of prosecution (the Dismissal Order) "because AKT Investments, Inc., has not timely prosecuted this case."

AKT, represented by Jones, filed a combined motion to vacate judgment, motion to reinstate, and motion for new trial (reinstatement motion) in which AKT explained why it had no attorney at trial and its efforts at retaining counsel after Jim Ross Law Group's withdrawal, and it argued that Jim Ross Law Group should not have been permitted to withdraw when its withdrawal motion did not inform AKT of pending or unanswered discovery. Along with other evidence, AKT attached Moslemi's declaration in which he explained his efforts to retain new counsel. The trial court held a hearing on the reinstatement motion but did not rule on it; the motion was eventually overruled by operation of law.

## Discussion

We first address AKT's third issue, which is dispositive. Under that issue, AKT argues that the trial court abused its discretion by not granting AKT's reinstatement

5

motion.[1] We agree that the trial court abused its discretion by not setting aside its dispositional order.

## I. Two Dispositional Orders

We begin by addressing the trial court's signing of two separate dispositional orders on the same day without indicating which order controls. This court has stated that because there can be only one final judgment in a case, "[a]bsent circumstances indicating that the first judgment was vacated, a second judgment purporting to be final does not vacate the first and is a nullity," *In re Brown*, No. 2-07-071-CV, 2007 WL 2460361, at *3 n.23 (Tex. App.—Fort Worth Aug. 29, 2007, no pet.) (mem. op.) (citing *Mullins v. Thomas*, 150 S.W.2d 83, 84 (Tex. [Comm'n App.] 1941), and *Azbill v. Dallas Cnty. Child Protective Servs. Unit*, 860 S.W.2d 133, 138 (Tex. App.— Dallas 1993, no writ)), but we have more recently said that "[a]ny change in a judgment made during the trial court's plenary power is treated as a modified or reformed judgment that implicitly vacates and supersedes the prior judgment, unless the record indicates a contrary intent," *Burnett v. Vo*, No. 02-14-00297-CV, 2015 WL 5097994, at *4 (Tex. App.—Fort Worth Aug. 28, 2015, pet. denied) (mem. op.). Neither rule helps us in this case, however, because we have no way to know which dispositional order was first or second. The Take-Nothing Judgment was filed

---

[1] The arguments under AKT's third issue and its fourth issue—which asserts that AKT was entitled to a new trial under *Craddock*—are interrelated, and we consider the arguments under each issue to be applicable to both.

by the clerk at 1:02 p.m., and the Dismissal Order was filed eight minutes later at 1:10 p.m., but neither dispositional order indicates the time at which it was signed by the trial court. Nothing in the record provides this court with a way to determine the sequence in which the trial court signed the orders.

At oral argument in this appeal, T Jordan's attorney stated that she had provided the Take-Nothing Judgment to the trial court before trial in accordance with the court's request and that she provided the Dismissal Order after the trial court asked her to submit a final order at the trial's conclusion. We appreciate that clarification, but although she has explained why the trial court had two different orders at hand, the information does not tell us the sequence in which the court signed the dispositional orders. We therefore cannot determine which dispositional order is the one final judgment. *See* Tex. R. Civ. P. 301 (providing that generally, only one final judgment may be rendered in any cause).

Fortunately for our resolution of this case, whichever dispositional order we review, we reach the same result. As AKT correctly points out, the trial court could not have properly granted a take-nothing judgment based on want of prosecution.[2] *See*

---

[2]AKT argues that the Dismissal Order states that it denies all relief requested in the case and thus, like the Take-Nothing Judgment, constitutes an erroneous final adjudication of the merits of AKT's claims. This court has held before that the inclusion of a Mother Hubbard clause in a dismissal order makes the order a disposition on the merits. *See Patterson v. Herb Easley Motors, Inc.*, No. 2-04-351-CV, 2005 WL 2044671, at *4 (Tex. App.—Fort Worth Aug. 25, 2005, no pet.) (mem. op.). Because of our disposition of this case, we need not decide how to address the challenged language in the Dismissal Order. *Cf. Estes v. Richerson*, No. 02-17-00391-

7

*Freeman v. Freeman*, 327 S.W.2d 428, 431 (Tex. 1959), *disapproved of on other grounds by Mapco, Inc. v. Forrest*, 795 S.W.2d 700 (Tex. 1990); *Beller v. Fry Roofing, Inc.*, No. 04-05-00159-CV, 2005 WL 3115828, at *2 (Tex. App.—San Antonio Nov. 23, 2005, no pet.) (mem. op.); *Att'y Gen. of Tex. v. Rideaux*, 838 S.W.2d 340, 341 (Tex. App.—Houston [1st Dist.] 1992, no writ) ("[A] trial court's authority to dismiss cases for want of prosecution does not confer upon it the authority to adjudicate . . . the merits of the dismissed claim."). On the other hand, courts that have addressed this circumstance have sometimes modified the take-nothing judgment to a dismissal order and affirmed the order as modified, and T Jordan asks that we do so here. *See* Tex. R. App. P. 43.2(b); *Fontenot v. Hanus*, No. 03-05-00551-CV, 2007 WL 2330719, at *1 (Tex. App.—Austin Aug. 17, 2007, no pet.) (mem. op.); *Beller*, 2005 WL 3115828, at *2. Thus, in reviewing the Take-Nothing Judgment, our options would be to reverse outright or to modify the Take-Nothing Judgment to make it a dismissal order. However, if we were to reform the judgment to a dismissal order, we would still have to consider whether the trial court abused its discretion by denying reinstatement—and we hold below that the trial court did abuse its discretion. Thus, whichever dispositional order controls, we will reverse.

---

CV, 2018 WL 3968784, at *4 (Tex. App.—Fort Worth Aug. 16, 2018, no pet.) (mem. op.) (assuming for purposes of the appeal that the challenged order dismissed the case without prejudice but nevertheless modifying the order to delete the Mother Hubbard language).

## II. Standard of Review and Reinstatement Standards

We review a trial court's denial of a motion to reinstate for abuse of discretion. *See Smith v. Babcock & Wilcox Const. Co.*, 913 S.W.2d 467, 468 (Tex. 1995). A trial court abuses its discretion if it acts without reference to any guiding rules or principles— that is, if its act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

What a party must show for reinstatement depends on the basis on which the trial court dismissed the case. A trial court's power to dismiss for want of prosecution arises from two sources: the trial court's inherent authority to control its own docket and Texas Rule of Civil Procedure 165a. *Villarreal v. San Antonio Truck & Equip.*, 994 S.W.2d 628, 630 (Tex. 1999). A trial court has the inherent authority to control its own docket, so the common law vests the trial court with authority to dismiss a plaintiff's suit when the plaintiff has failed to prosecute the case with due diligence. *Id.*; *Rasco v. Ducars Inv., LLC*, No. 02-21-00375-CV, 2022 WL 4373499, at *2 (Tex. App.—Fort Worth Sept. 22, 2022, no pet.) (mem. op.). Rule 165a similarly authorizes a trial court to dismiss for a plaintiff's failure to dispose of a case within the time standards promulgated by the Texas Supreme Court. Tex. R. Civ. P. 165a(2). Under those time standards, non-family law civil jury cases should, "so far as reasonably possible," be tried or otherwise disposed of "[w]ithin 18 months from appearance

9

date."[3] *See* Tex. R. Jud. Admin. 6.1(a)(1), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. F app. In addition to these two time-focused grounds for dismissal, Rule 165a also permits dismissal when any party seeking affirmative relief fails to appear "for any hearing or trial of which the party had notice." Tex. R. Civ. P. 165a. Before dismissal is proper under either Rule 165a or a court's inherent authority, the party facing dismissal must be provided with notice and an opportunity to be heard.[4] *Id.*

Obtaining reinstatement after dismissal on any of these grounds involves, at the least, a reasonable explanation for the failure to appear or diligently prosecute the suit. *See* Tex. R. Civ. P. 165a(3); *In re Conner*, 458 S.W.3d 532, 535 (Tex. 2015) (orig. proceeding) (holding that when plaintiffs provided no reasonable explanation for their nearly decade-long delay in prosecuting suit, their failure to show good cause required trial court to dismiss case under inherent power or Rule 165a(2)). When the trial court dismisses a case based on a party's failure to appear, reinstatement is governed by Rule 165a(3), which requires a trial court to grant a properly-filed reinstatement motion if it finds, "after a hearing[,] that the failure of the party or his attorney [to appear] was not intentional or the result of conscious indifference but was due to an

---

[3]The record indicates that in this case, a jury had been demanded and a jury fee had been paid. AKT filed its petition on March 23, 2018, and T Jordan answered on June 4, 2018.

[4]The record does not indicate that the trial court provided notice of its intent to dismiss AKT's case for want of prosecution. Thus, the only potential notice to AKT of the possibility of dismissal was the dismissal motion filed by T Jordan—the same motion that, at the hearing on the motion, the trial court said it was not granting.

accident or mistake or that the failure has been otherwise reasonably explained." Tex. R. 165a(3). This standard is essentially the same as the *Craddock* standard for setting aside a default judgment. *See Smith*, 913 S.W.2d at 468 (citing *Craddock v. Sunshine Bus Lines*, 133 S.W.2d 124 (1939)). "A failure to appear is not intentional or due to conscious indifference within the meaning of the rule merely because it is deliberate; it must also be without adequate justification," and "[p]roof of such justification— accident, mistake[,] or other reasonable explanation—negates the intent or conscious indifference for which reinstatement can be denied." *Id.* Under this standard, some excuse, even if not a good one, suffices as a reasonable explanation. *Milestone Operating, Inc. v. ExxonMobil Corp.*, 388 S.W.3d 307, 310 (Tex. 2012) (applying *Craddock* standard to party's failure to answer). However, "unbelievable and internally inconsistent excuses" cannot meet the burden of proof. *Boatman v. Bradley M. Griffin, Inc.*, No. 02-10-00417-CV, 2011 WL 2989925, at *5 (Tex. App.—Fort Worth July 21, 2011, no pet.) (mem. op.) (quoting *Folsom Invs., Inc. v. Troutz*, 632 S.W.2d 872, 875 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.)).

What is required for reinstatement on the other two grounds is less specifically articulated. *See, e.g., Rampart Cap. Corp. v. Maguire*, 1 S.W.3d 106, 107 (Tex. 1999) (Hecht, J., dissenting to denial of petition for review) (noting that "[s]everal courts of appeals have concluded that Rule 165a(3)'s reinstatement standard should not apply to cases dismissed under the trial court's inherent power" but have not explained what reinstatement standard should apply). This court has said that for reinstatement after

11

dismissal under a court's inherent authority or under Rule 165a(2), the *Craddock* standard does not apply. *Maida v. Fire Ins. Exch.*, 990 S.W.2d 836, 841 (Tex. App.—Fort Worth 1999, no pet.). However, we have also indicated that it does apply. *Ortiz v. Rodriguez*, No. 02-20-00388-CV, 2021 WL 4472623, at \*5 (Tex. App.—Fort Worth Sept. 30, 2021, pet. denied) (mem. op.) (stating that "whether the dismissal was under Rule 165a or the trial court's inherent authority[ ], a trial court must reinstate the case if it finds that the noncompliance with the promulgated time standards was not intentional or the result of a party's conscious indifference but was due to a party's accident or mistake or that the noncompliance has been otherwise explained."); *see also Balla v. Ne. Lincoln Mercury*, 717 S.W.2d 183, 184 (Tex. App.—Fort Worth 1986, no writ) (stating that Rule 165a's requirement after dismissal to show a lack of intent or conscious indifference also applies to cases dismissed under trial court's inherent authority).

In *Maida*, we did not expressly articulate what alternate standard applies for reinstatement, but we discussed what is required for a party to avoid dismissal in the first place and held that because the trial court in that case had abused its discretion by dismissing, it had also abused its discretion by denying reinstatement. *Maida*, 990 S.W.2d at 842. Avoiding dismissal under Rule 165a(2) requires a showing of "good cause," which in turn requires a reasonable explanation for not prosecuting the suit within the applicable time standards. Tex. R. Civ. P. 165a(2); *In re Conner*, 458 S.W.3d at 535 (holding that when plaintiffs provided no reasonable explanation

12

for their nearly decade-long delay in prosecuting suit, their failure to show good cause required trial court to dismiss case under inherent power or Rule 165a(2)). The standard for avoiding dismissal under the trial court's inherent authority also includes a reasonable explanation for the delay as one of the factors that may be considered in determining whether a suit has been diligently prosecuted. *Maida*, 990 S.W.2d at 842. Those factors include "the length of time the case was on file, the extent of activity in the case, whether a trial setting was requested, and the existence of reasonable excuses for delay." *Id.* We have applied those same factors in affirming and reversing a trial court's denial of reinstatement. *Rasco*, 2022 WL 4373499, at *6 (applying factors to hold that trial court abused its discretion by denying motion to reinstate). In other words, when a trial court has dismissed for failure to timely prosecute the suit, when we have not applied the *Craddock* standard for reinstatement, we have considered whether the movant made the same showing it would have had to make to prevent dismissal.

## III. The Postjudgment Motion Evidence

We now address the evidence before the trial court when it ruled on AKT's reinstatement motion. In Moslemi's declaration attached to the motion, he stated that he originally retained attorney John Paul Chidgey to represent AKT and that he had paid Chidgey $500 a month for almost two years. Chidgey apparently sent some discovery requests to T Jordan; in February 2020, T Jordan filed a notice that it had served on AKT's attorney its responses to AKT's requests for disclosure. What

13

Chidgey apparently did not do, however, was respond to discovery requests. In January 2020, T Jordan filed with the trial court a certificate of written discovery stating that it had served on AKT, through AKT's attorney, its requests for disclosure and first request for production, but nothing in the record indicates that Chidgey ever responded. As the trial court's order granting Chidgey's withdrawal noted, Chidgey's withdrawal motion had stated that "Discovery Responses are set for agreed extension."

Chidgey should have relayed to AKT what discovery responses were due and when because the withdrawal order directed Chidgey to provide written notice to AKT of any settings or deadlines known to Chidgey of which AKT had not been previously notified. Nothing in the record indicates that this order was sent to Moslemi. Moslemi stated in his declaration that before Chidgey's withdrawal, he was never given a copy of the discovery that had been served on Chidgey and was not told that discovery remained unanswered.

Moslemi explained what he knew about the reason for Chidgey's withdrawal:

In the winter of 2019/2020 Mr. Chi[dg]ey's father passed away and I called him to give him my condolences. A few days later he contacted me and told me that he would be withdrawing as counsel for AKT because "I had not respected his father[."] To this day I have no idea what I said or did that offended Mr. Chi[dg]ey.

The trial court granted Chidgey's withdrawal in mid-February 2020, and in March 2020, Moslemi met with Jim Ross Law Group. According to Moslemi, during Jim Ross Law Group's representation of AKT from March 2020 through May 2021,

14

he was never sent any discovery by the firm or told that any discovery was outstanding.

In T Jordan's response to Jim Ross Law Group's motion to withdraw, it asserted that AKT had not responded to its January 2020 discovery requests. The response was properly served on the law firm, but there is no indication that a copy was provided to Moslemi or any other AKT representative.

Moslemi did not consent to the firm terminating its representation. Nevertheless, Moslemi began looking for new counsel in May 2020 upon learning of the firm's imminent withdrawal, and he met with attorney Michael O'Donnell. Moslemi's understanding was that O'Donnell had agreed to take on the case; as evidence, he attached to his reinstatement motion a copy of a bank statement showing a $500 payment to O'Donnell's law office.[5] When O'Donnell called Moslemi and asked him to obtain the case file from Jim Ross Law Group, Moslemi emailed the firm. Moslemi described the delayed responses he received from the firm and O'Donnell's dropping of the case:

> I sent several emails to the Jim Ross Law Group and did not get any responses. Finally they began to respond and put together the file in June and July [of 2021,] but then I was contacted by representatives of Jim Ross Law Group[,] who told me that they could not get Mr.

[5]At the reinstatement hearing, AKT's attorney stated, "You can see in the online system where either Mr. O'Donnell signed up to receive notices or he was served by the opposing counsel with documents in the case." In AKT's brief, it states that O'Donnell "appeared on the trial court efile service list but it is unclear what if any documents were served on him."

O'Donnell to respond to their calls and emails. I began trying to call Mr. O'Donnell and spoke to his staff on a few occasions. Finally, in September I drove to his office and sat in the waiting room demanding to see him. At that time I was told he was "filing for retirement" and would be unable to work on the AKT case. I have no idea if that is true or not. I never got back the money AKT paid to Mr. O'Donnell[,] and I never received a statement for any work he performed.

Moslemi then described his attempt to secure new counsel, which involved his meeting with multiple attorneys, who each declined to work on the case:

17. As the case was set for trial in November I began to contact and meet with as many attorneys as possible in order to try to obtain counsel for AKT. In late September and October I met with Jeronimo Valdez who had originally drafted the demand letter in this case but he declined to take the case. I also met with Payam Dale who informed me that he didn't handle this type of case but then referred me to [Rod] Khavari with DFW Law Group. I met with Mr. Kh[ ]avari but I could never get him back on the phone to discuss taking the case.

18. I was subsequently discussing the matter with Mr. Ebi Shokravi who is a business colleague of mine who referred me to Kenneth R Jones. I did not speak to Mr. Jones until October 14th[,] and at that time he told me that it would be too late for him to take up representation of AKT at the time of trial but that he would assist in filing a response to a pending motion and that if all the documents were received timely and the court granted a continuance that he would represent AKT.

With Moslemi's declaration, he attached a decision from the Texas Comptroller of Public Accounts regarding tax, penalty, and interest due from AKT for unpaid sales tax. He also attached a copy of a resale certificate submitted to Community Coffee Company, LLC by "Tom Diab," which Moslemi said was an alias of Haitham Aldiab, T Jordan's representative. The last four digits of the tax identification number[6]

---

[6]The rest of the number has been redacted. *See* Tex. R. App. P. 9.9.

written on the certificate by Diab match AKT's tax identification number on the Comptroller's decision.[7]

Attorney Kenneth Jones also provided a declaration in which he stated that in October 2021, he was asked by a current client to assist AKT. He spoke with Moslemi on October 12, but at that time Jones did not have the case file, so he contacted Jim Ross Law Group to obtain it. The firm sent him a Dropbox link, but the linked Dropbox folder contained only the pleadings. Jones emailed back to request all discovery, documents, and correspondence and received a second link for a Dropbox folder that contained only unanswered discovery. Believing he had insufficient information to adequately represent AKT, he prepared a conditional engagement letter in which he agreed to assist AKT with keeping the case on the docket and to prepare the case for trial if he received all pleadings, discovery, documents, and correspondence in the matter and if the trial court agreed to continue the case and keep it on the docket. Jones subsequently confirmed with Jim Ross Law Group that the Dropbox folders shared by the firm contained all the documents that the firm had for the case.

---

[7]AKT included this evidence to meet the "meritorious defense" requirement of *Craddock*. *See Craddock*, 133 S.W.2d at 126. However, this court has held that setting up a meritorious defense or claim is not a prerequisite to a successful motion to reinstate. *Sellers v. Foster*, 199 S.W.3d 385, 397 (Tex. App.—Fort Worth 2006, no pet.).

## IV. Analysis

When reviewing a trial court's refusal to reinstate, we start with the dismissal's basis. *Rasco*, 2022 WL 4373499, at *2; *Maida*, 990 S.W.2d at 839. To determine the basis, we examine both the trial court's notice to the parties that the court intends to dismiss the case and the dismissal order. *Rasco*, 2022 WL 4373499, at *2; *Brown v. Sanders*, No. 02-21-00212-CV, 2022 WL 2071782, at *3 (Tex. App.—Fort Worth June 9, 2022, no pet.) (mem. op.). When the record does not contain formal findings of fact or conclusions of law and the dismissal order does not specify the reason for dismissal other than to generally dismiss for "want of prosecution," we must affirm the trial court's judgment on any theory supported by the record. *Sellers*, 199 S.W.3d at 391.

Here, we cannot consider the trial court's written dismissal notice because there was none.[8] At trial, the court stated that it was dismissing because AKT did not have

---

[8]Dismissal for want of prosecution without notice usually requires reversal. *Villarreal*, 994 S.W.2d at 630. However, when the trial court holds a hearing on a reinstatement motion while retaining plenary power over the case, that hearing can cure the due process violation arising from lack of notice. *See Yeoung Jin Kim v. Kim*, No. 02-19-00228-CV, 2020 WL 5047896, at *8 (Tex. App.—Fort Worth Aug. 27, 2020, no pet.) (mem. op.). However, such a hearing does not cure the lack of notice if the dismissed party does not receive the same hearing with the same burden of proof that it would have had before the dismissal order was signed. *See id.*; *Sellers*, 199 S.W.3d at 396 (holding that notice of dismissal and a subsequent hearing on the reinstatement motion did not cure lack of notice of intent to dismiss). Here, the Dismissal Order stated only the failure to timely prosecute as a basis for dismissal, and the Take-Nothing Judgment provided no reason for dismissal. *See Brown*, 2022 WL 2071782, at *3 (stating that when dismissal order does not specify the dismissal grounds, appellant must address all three possible dismissal grounds in

18

an attorney—i.e., failure to appear—but it elsewhere made statements that could be read as its also dismissing for AKT's failure to timely prosecute the case.[9] The Take-Nothing Judgment recites that AKT appeared without an attorney, but it does not affirmatively state that the failure to appear was a basis for the judgment. *See Cummings v. Billman*, 634 S.W.3d 163, 166 (Tex. App.—Fort Worth 2021, no pet.) (mem. op.) (observing that the dismissal order noted the appellants' failure to appear at a dismissal hearing but that the order's decretal language did not state a specific ground upon which dismissal was based). The Dismissal Order, on the other hand, states that the case was dismissed because AKT had not timely prosecuted the case and does not mention AKT's failure to appear.

---

reinstatement motion). Because it is impossible to know which dispositional order is the final judgment, it is impossible to know which grounds—all three possible dismissal bases or only failure to timely prosecute—that AKT needed to challenge in seeking reinstatement. Further, at the dismissal hearing, the trial court said that it was dismissing for failing to appear, and at the (very short) reinstatement hearing, the parties focused their arguments on the failure to appear, which the trial court did not in any way indicate was not the sole basis for its dismissal. However, AKT did not raise any issue challenging lack of notice or the reinstatement hearing's inability to cure any such lack of notice.

[9]The trial court told Moslemi that it was going to grant T Jordan's motion to dismiss (the motion it had previously declined to grant) "because you don't have an attorney." However, a short time later, the court further stated, "The fact [is] that since May you have not found an attorney to come in here and represent you. I mean, you haven't answered the discovery. You haven't done anything on the case."

19

AKT's reinstatement motion and appellate brief explain AKT's failure to appear and to timely prosecute or dispose of the case,[10] including its failure to respond to discovery. AKT's evidence presented to the trial court indicated that it was not AKT's actions that caused the delay or a lack of activity in the case; indeed, Moslemi's objection to Jim Ross Law Group's withdrawal suggested that he did not want further hindrances to the suit's progression. Instead, the delay came primarily from a series of attorneys deciding to take the case—or leading Moslemi to believe that they had done so—and then, for one reason or another, after doing nothing to advance the case, deciding that they could not represent AKT after all.[11]

Chidgey withdrew without responding to T Jordan's discovery requests or informing AKT about pending discovery deadlines. Jim Ross Law Group alone cycled AKT through at least three different attorneys—not counting the attorney who appeared at the hearing on the motion to withdraw—each of whom apparently did

---

[10]Neither AKT's reinstatement motion nor its brief expressly cites the trial court's inherent authority or the Texas Supreme Court's time standards, and at one point in its brief, AKT states that the trial court rendered its judgment solely because AKT did not appear through counsel. But in other sections of its brief, it makes arguments explaining AKT's failure to respond to discovery, which was one of the bases on which T Jordan based its dismissal motion and relates to AKT's failure to timely prosecute its suit. Considering the facts asserted and the arguments included throughout AKT's brief, and construing the motion and brief reasonably and liberally, we consider the question of AKT's failure to timely prosecute to be adequately raised and addressed. *See Rasco*, 2022 WL 4373499, at *5.

[11]We further note that T Jordan itself twice requested a continuance, and during part of the time that trial was pending, no trial could have been held due to the ongoing COVID-19 pandemic.

20

little to nothing to move the case along, and the trial court then allowed the firm to withdraw over AKT's objection.[12] AKT had no ability to stop attorneys from leaving Jim Ross Law Group and passing the case off to other firm attorneys to handle, and even before dismissal, the trial court was aware of how that firm had treated AKT's case. The trial court was also aware that Moslemi objected to the firm's withdrawal on AKT's behalf. Despite that objection, Moslemi nevertheless promptly secured—or believed he had secured—the services of another attorney, O'Donnell, who accepted Moslemi's payment and requested the file from Jim Ross Law Group but then became unresponsive and eventually informed Moslemi of his impending retirement, after having apparently done nothing of real substance on the case. Moslemi then met with three separate attorneys in an attempt to obtain counsel, but none accepted the case. Moslemi ultimately did find an attorney—Jones—who told the court that he would respond to discovery and represent AKT if a continuance were granted in the case. Because the trial court did not grant a continuance, AKT had no representation at trial, but Moslemi still appeared on AKT's behalf, which was all AKT could do in the circumstance. In summary, the only evidence in the record is that AKT's

---

[12]We do not address AKT's third or fifth issues arguing that the trial court should not have granted the firm's withdrawal motion. We mention the trial court's grant of the withdrawal over AKT's objection only as an indication that AKT's failure to have an attorney act on its case was not because AKT discharged its attorney or agreed to the withdrawal.

representative has been trying diligently to pursue the suit but that circumstances outside of his control have prevented that from happening.

As for discovery, nothing in the record indicates that Moslemi was aware that discovery requests had been received by Chidgey and not completed by either him or Jim Ross Law Group. To the contrary, the only evidence regarding Moslemi's knowledge is his declaration, which states that he was unaware. The order permitting Jim Ross Law Group's withdrawal required the firm to notify AKT of any additional settings or deadlines of which the firm had knowledge and had not already notified AKT, but there is no indication that AKT was informed of pending, unanswered discovery requests from T Jordan. Rather, at the hearing on the withdrawal motion, Turzinski told the trial court that "[t]here are no deadlines that are currently in this case." T Jordan's attorney did not contradict him or mention any pending or missed discovery deadlines. Further, the record includes no indication that T Jordan ever moved to compel its outstanding discovery, which would have brought that outstanding discovery to AKT's attention.

T Jordan asserts multiple times that AKT did nothing to retain counsel after Jim Ross Law Group withdrew in May 2021, but the uncontroverted evidence shows that AKT did retain an attorney—O'Donnell—or at least had good reason to believe it had. T Jordan later states that Moslemi "admitted that he was talking with [a] new attorney in May, but he failed to ensure that such attorneys were engaged and appeared." However, the evidence indicates that Moslemi took steps to obtain the

22

client file for O'Donnell and that when he was subsequently unable to get in touch with O'Donnell, he went and sat in O'Donnell's office until he was able to meet with him, at which point he was told about the attorney's retirement. T Jordan also asserts that "[i]t is apparent that AKT did nothing to find an attorney to appear after the continuance was denied." But AKT's continuance was denied on Thursday, October 28, and trial was the following Monday.

Based on the uncontroverted evidence, AKT provided a reasonable explanation showing good cause for not appearing and for not prosecuting its suit sooner. We recognize that the case was on file for longer than a civil suit generally should be and that very little activity was conducted in the case. *See Maida*, 990 S.W.2d at 842 (discussing dismissal factors). However, AKT provided a reasonable explanation for how that happened and showed good cause for reinstatement. Although there are circumstances in which a party's inability to retain counsel or an attorney's failure to act with diligence in prosecuting a suit is not an adequate excuse, this unusual case does not present those circumstances.

This court recognizes the frustration that both parties and the trial court must have felt from having this case pending for so long, and the record suggests that through May 2021, both the trial court and T Jordan showed a certain degree of understanding with AKT and its difficulty in retaining counsel. Nevertheless, under the unusual facts and circumstances of this case, the record does not support a conclusion that AKT acted intentionally or with conscious indifference in not having

23

representation at trial or that it failed to show good cause for its failure to timely prosecute and dispose of the case. Nothing indicates that this is a case in which a party cannot retain counsel because of its own fault. To the contrary, the record indicates that Moslemi acted to the best of his ability to obtain and keep counsel for AKT to prosecute this case. Given the unique circumstances of this case and the policy of this state that adjudication on the merits is preferred, *see Kramer v. Kastleman*, 508 S.W.3d 211, 227 (Tex. 2017), we sustain AKT's third issue.

## Conclusion

Having sustained AKT's dispositive third issue, we reverse the trial court's disposition of the case and remand the case to the trial court.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: January 26, 2023

24